Martha Stringer v. County of Bucks, No. 23-1373 Martha Stringer v. County of Bucks, No. 23-13773 Martha Stringer v. County of Bucks, No. 23-13733 Kerry Tuning v. Archer & Greiner Mr. Becker. May it please the Court. Chip Becker here for the plaintiffs, Martha and Paul Stringer, on behalf of their daughter, Kimberly Stringer. And I think all of us see the challenges of negotiating a qualified immunity analysis in the context of a complaint that is missing detail. And ideally, we would like to have a complaint that supplies more detail. The use of force reports that Ms. Tuning mentioned were not available when this complaint was first filed. The procedural history of this case mostly involves identifying who the officers were, which is the occasion for the amended complaint. And those are the differences, really. The only difference between the original complaint and the amended complaint has to do with the identification of the officers, which brings us to this place where we have a complaint that does satisfy a Rule 12b-6 standard, but provides some sympathy or empathy for a district judge, an experienced district judge trying to evaluate not just whether a plausible, cognizable claim has been asserted, but whether the right has been clearly established for purposes of qualified immunity. And what this judge does is say, he says it's premature. He does deny, procedurally what he does is deny a 12b-6 motion. But what he's saying is, I want to know more. I think we've said that that's tantamount to a denial. It is a denial. It's a denial. Well, he does. He does deny it, but then in his footnote he explains what he's thinking about. And what he's thinking about is, I can't, this is what he says, I can't tell, based upon these allegations, whether it would have been clear to the officers. He doesn't ask for, he doesn't say that he's interested in knowing the subjective, what the officers thought they were doing. He does say, I can't tell right now whether it would have been clear to the officers that they were violating a right. And so where we are is, let's find out. Another way of saying that might be, this complaint doesn't cross the line. I think it maybe could with some more facts, but it doesn't. So my question is, is it appropriate to go ahead and dismiss the case at that point? I don't think we, you know, the dicta from the non-presidential opinion that the district court cited doesn't say you can never dismiss these cases. The dicta from the non-presidential opinion says it's general and wise to do that. So what should our rule be? Well, in that case, I think the Newland case is the name of the case, and there's at least one other case whose name now escapes me because it's written in my notes, and of course it's in my notes, that talks about the wisdom of a Rule 12e statement for a more definite complaint. And that motion, that request has not been made of the plaintiffs, and had it been made of the plaintiffs, maybe at this point there's more that one could say. Right? And I don't know what the posture of the court might be as to whether that's a direction that the court would feel itself having latitude to give since it wasn't raised below. Certainly the district court didn't see that as a pathway forward. The district court's view was let's just deny the motion to dismiss and find out what happened. Let me stop you there for a second. Sure. I understand maybe it would not be wise to do that, but it's not inappropriate, right? A district court could on a complaint like this just dismiss it. Well, it could dismiss it if either it found that there wasn't a cognizable cause of action and the district court found that there was a cause of action. Let's assume that it satisfies 12b-6 and doesn't meet the qualified immunity, the clearly established component of qualified immunity. Well, as to that, I don't doubt that a district court could do that and in a circumstance where that was appropriate. But a 12b motion or some targeted discovery might make it safer to do that later on. Yes, certainly it might feel more secure if there's a more developed record upon which the district court can say I have really evaluated the facts in a meaningful way and I have concluded that there is not a clearly established right at issue in the case at issue. What I would say to all of you is that there is, I understand and sympathize, I'm not sure sympathy is the proper word for me to use, but I understand the district court's perspective that he wanted more factual development, more texture so that he could understand what happened and then also figure out how to assess that in the context of all of these defendants. But what I would also say is that even at this stage, there is a clearly established right that is at issue and it's the clearly established right, Judge Krause, you mentioned the Kingsley factors, it is the right to be, the right of Kim Stringer, and I'll just try to say this, and it's always hard to fashion these rights, but it's the right of Kim Stringer to be free from force that amounts to punishment for her failure to comply with instructions when she was, as alleged in this complaint, incapable of following instructions and did not present a threat to anyone. So part of the right, I just want to make sure I understand, in articulating the right just now, you are including for failure to comply with instructions and was incapable. So the right you're articulating for qualified immunity purposes incorporates her mental health condition. You know, Judge Chung, I'm reluctant to make mental health as such an explicit... I mean, isn't that the reason she's... It is. That is what is alleged. I think from the plaintiff's standpoint, the difficulty with articulating a right that's too precise is that you can potentially walk yourself out of a qualified immunity analysis, right? The more precise the right is, the more risk there is that my brother and sister counsel will stand up and say, but hey, that's not a clearly established right. You can also walk yourself out of the qualified immunity analysis by defining it too broadly, right? Well, this is the Goldilocks problem, right? This is the Goldilocks problem, and this is why... Wait, wait, let me finish. The red brief twice defines the right this way, page 13. Is her right under the 14th Amendment to be free from punishment while in pretrial detention? Is that specific enough? Well, you know, so yes. Right, I actually do think that is specific enough, and maybe it's a mistake to try to embellish with the facts. There's a trio of cases, the Bell case from 1979, there's the Graham case from 1989, which has a footnote in which the Supreme Court then says there is no doubt, it is clearly established, that the Due Process Clause provides a right to a pretrial detainee to be free from excessive force amounting to punishment. And at that time, there was some ambiguity as to whether a subjective assessment or objective analysis would apply, and that issue then was resolved in the Kingsley case, which I think is 2015, in which the Supreme Court said it's an objective standard, and then went on, and Judge Crousey mentioned the factors, and that objective analysis can then be assessed by such factors or leavened, textured, with factors like the amount of force used relative to the need to use force, the security threat, the severity of the security situation, ultimately the injuries assessed by or suffered by the plaintiff. And I think that speaks to whether or not it is tantamount to punishment, not necessarily to whether it's clearly established. I think that's kind of the tension we keep talking about here is your very broadly expressed right, as Judge Porter just read out, and then the more narrow one, not as narrow as I said, with the mental health component, but the unable to comply. The clearly established is often in the application of what is tantamount to punishment. Clearly, 14 hours in a refrigerator-like condition with no clothes is punishment, as opposed to maybe if there's, as I said before, petty noncompliance, where you don't move aside so your food tray can be in, and then you get put in a restrictor. Maybe that is tantamount to punishment, but there's a lot that is an open question, and I guess that's why we're trying to understand what you are saying is the clearly established, and maybe you are just saying it's the broadest, but it sounded to me like you're arguing that it does contain this component for failure to comply and was unable to comply. I guess I just really want to understand what is, for the qualified immunity analysis, what is the right? Well, there are two articulations of the right that I have thought about in advance of coming here. And one is the articulation that Judge Porter and I were just discussing, which really flows from Graham and Kingsley, which I do suggest is sufficiently clear for purposes of qualified immunity. And I understand that there's this, what I'm thinking of as a Goldilocks principle, right? It can't be due process. It can't be liberty, right? I don't want to err on one side or the other. Hasn't the court told us to look for specificity? Well, I think actually there's also some case law suggesting that the right should be broadly construed, right? So the courts have not made it easy, and I think that's because it's not easy to define this with, to define, to clearly articulate the clearly established right. But in my mind, there is a zone somewhere between Kingsley and Graham, and a more factually textured version of that, Judge Chung, to the point that we were discussing, where we're talking about really whether the force was rationally related to a non-punitive governmental purpose, or as Bell talks about it, and Graham talks about this concept, whether the force applied was excessive, unreasonable, arbitrary, capricious, relative to the governmental interest. And of course, I think the Kingsley factors capture that, but there is then, trying to be more specific, there is then a formulation, which is that it's the right of Kim Stringer to be free from applications of force amounting to punishment, where because she did not comply with instructions that she could not comply with, and where she presented no threat to anyone, and was not resisting anyone, right? So that's, wherever we are in the zone between those two, I don't want to call them poles, between that framework, I think that, and it doesn't matter what I think, that right, that zone of right is clearly established. The complaint says she wasn't a threat to the officers or other inmates. It does not say she wasn't a threat to herself. It doesn't say that. That is true. And that's a fact that might be useful to develop in the course of, in the course of discovery. And maybe it's true, as Ms. Chuning said, that Ms. Stringer was unruly. Maybe she was simply terrified and cowering in a corner. And maybe she was taking her clothes off because she was flirtatiously bipolar and paranoid. So the dilemma is full board discovery would disclose all of this, but we're supposed to decide these at the earliest possible stage, right? Well, that's right. And you have a district court, you have a district court who has made a judgment that more discovery will help make a textured, meaningful, and solid decision on these grounds. And while the law does provide the cases to say we should decide qualified immunity at the earliest possible stage, there are rafts of cases in which it is decided, in which qualified immunity is decided at summary judgment because that's the moment when it can meaningfully be decided. Waving the case through to discovery does not seem to honor the injunction that we decide this at the earliest possible stage so that these officers aren't exposed to litigation. I mean, that's the point, right? Yes. And if I don't have an immediate response, right, it's because if my response were too glib, then it wouldn't be meaningful, right? This is, I think Ms. Cheney used the word detention, this is detention, right? So I don't stand here having a 100% answer to this dilemma. Given that you have now the use of force reports, is amendment futile? I mean, to the extent if we were to say, oh, you know, the right is not really self-evident from this complaint or, you know, the right might turn on whether it's petty noncompliance or she's a serious danger to herself, does the use of force reports, the fact that you now possess those, would amendment be futile? So the use of force reports, as I understand them, were primarily useful to counsel in that they identified who the officers were. In terms of what Ms. Stringer was doing and what the officers were doing in response to that, those use of force reports may provide a perspective in some instances, but bear in mind this is also a circumstance where other inmates at the Bucks County Correctional Facility were so alarmed by what they observed that when they left the facility, they actually figured out who Ms. Stringer's parents were and called her, and then there was a series of newspaper articles about it, which eventually prompted Ms. Stringer's transfer to the Norristown State Mental Health Facility. So there's a variety of perspectives about what was going on and who was doing what to whom. Does the complaint sufficiently rely on that newspaper article that that's something that we can look at? The newspaper article provides a characterization of, and actually there are several, I think there's only one that's identified in the complaint, but those news articles do provide some color that is not in the complaint itself. My question is, the complaint references it in a couple of places, and those reports that are incorporated from other inmates, is that sufficient for us or the district court to look at that without converting it to a motion for summary judgment? That's certainly heading towards a motion for summary judgment, isn't it? I think if I were a defense counsel, I would be unhappy about your doing that. Let me ask you to follow up on Judge Porter's question. In terms of opening this up for discovery, it's not all or nothing. You agree that in some past cases, we have remanded for limited discovery, right? And the federal rules provide for proportional targeted discovery. Before it was opened up in terms of just discovery for liability purposes, right? Yes, and that's a pathway forward. That is a pathway for accommodating, for balancing the tension between allowing the district judge to make a more meaningful decision, as the district court saw it, and respecting the defendant's interests under the principles of the law. That would be a path. Then how do we distinguish between the better path being a 12e motion for more definite statement or some amount of discovery? As between those two options, limited discovery is far more functional, because there's only so much information that we have. We need to depose people. We need to get video. Part of what was going on here is what are called planned use of force operations, which, as I understand it, involved correctional officers wearing body armor, which had body cameras. Then there are cameras in the prison itself. We want that video. We want to be able to depose people. By the way, when we can get the video and when we can depose people, what we can also do is potentially to narrow the scope of the complaint, right? I think none of you will be surprised to hear that probably if this case is allowed to go forward and should it reach trial, there won't be 29 defendants left in the case by the time we get there. It will also help define the scope and shape of the challenge before the district court. In articulating your right as not able to comply versus not able to comply due to a mental illness, is it your suggestion then that what would clearly establish the right is, you know, things like where there's not enough time to comply when an instruction is given or, you know, where the instruction is given, the instruction might be to raise your hands and they're handcuffed or those types of unable to comply cases? Those are the ones that would establish this clearly? Well, so again, the more textured we are, the more granular we are, I think the more of a problem I have in showing a richly textured body of case law. I think that where I really sit with this, and there's just a few seconds left, so I'll just try to finish this thought, is the framework provided in Bell and Graham and Kingsley that what we're doing when we think about excessive force and due process in the context of pretrial detention is to evaluate whether the force that has been applied is in the nature of punishment. And here we have someone, as alleged, who was simply not for a petty reason, but for a very serious reason, unable to participate in what I'll call the life of the prison and was subjected to, as described in the complaint, painful, humiliating, and psychologically destructive punishment as a result. So I do recognize that it might be hard to figure out exactly what mental illness means in the context of America's prisons, right? And so I'm reluctant to try to frame it right in those terms. I'm also trying to understand that. But on these facts, our contention is for sure that what happened was arbitrary, was capricious, was not reasonable, and that there is a deep framework of U.S. Supreme Court law and Third Circuit law that would clearly indicate to the guards on these facts that what they were doing was not lawful. There's probably also a challenge in separating unable, mentally ill inmates or pretrial detainees being unable to comply and mentally ill pretrial detainees being unwilling to comply. You know, we're stuck with the complaint here, but if it were to go beyond the complaint, I mean, I don't know how we could articulate a rule for purposes of defining the right that teases out the difference between unwilling and unable when you're talking about mentally ill inmates. Well, it's certainly possible that should there be additional discovery, whether it's through the form of you affirm the case goes forward to standard discovery, whatever that means exactly, or whether there's a more limited scope of discovery that one might expect a renewed motion to dismiss, which would include a qualified immunity component again, and then maybe that conversation would be ripened. And just in closing, let me just say that I recognize in my office at Kline Inspector, there's a lot of different kinds of cases, and I don't want to put them on a continuum of the good cases versus the not good cases, right? But cases are often not perfect, and this is a case that has, I think, sort of a powerful story and that has been framed appropriately at the motion to dismiss stage for sure within the language of a constitutional violation. But where it goes, and hopefully it will go, and where it goes is something that we'll sort out and we'll live with the consequences of it. And obviously we represent Ms. Stringer, we're trying to get a recovery on her behalf, but we're ultimately going to be framed by the facts and the law, and we want to get that ripened. We want to get a result for her, but we also want to get this ripened in a place where this district judge can make the decision that he wants to make on a record that he can live with. Mr. Becker, can I just get you to qualify? You're not raising a separate claim on appeal for the first time about an unconstitutional exposure, right? I'm sorry, an unconstitutional exposure? In terms of her being naked at multiple points. No. What relevance, what role does that have in connection with the excessive force claim? I mean, is that just color or is it actually a component of the claim itself? I think it's probably color. I mean, the fact that she's naked, the complaint doesn't say, but she's not putting on clothes and she's refusing to put on clothes. And it's in that context, and that is her condition, when officers, as described in the complaint, enter her cell, handcuff her, spray her with OC spray, take her to a restraint chair where she is able to be viewed. Her condition in the restraint chair, the way this prison is set up, you could look into a window and see her in her cell or in some other cell in the restraint chair. So how much of that is part of the excessive force claim? I think it is, if I have to choose between part of the claim and color, I don't 100% want to choose, but I think it's mostly color. The way you just ordered those events was consistent with what you said in the brief, which is they came in, put her in a chair and maced her. Oh, right. The complaint doesn't say that. So let me address that. I think that Ms. Tuning and Mr. Scott may have raised a good point, which is that we made a characterization in our complaint, which is sort of over our skis in terms of what was actually in the complaint. The complaint says there were these tools that were being used by the correctional officers, and they were used all sort of at the same time, and the complaint doesn't chart a sequence of handcuff her, put her in a restraint chair, and then O.C. spray her, and that was, I'll say it, a mistake on our part. And just to be clear, so what Judge Krause was clarifying, you're not saying it's unclear whether the complaint is alleging she was nude in the chair and there's some duty to clothe her that was failed, or even whether she was nude in the chair. So I'm just trying to – I just want to make sure that the nudity, there's no implied duty to address that? Right, so I'm not sure there's a duty to clothe. The way that I understand Bell and Kingsley and Graham, and particularly Bell, is Bell talks about the right of the pretrial detainee not to be punished. And punishment can take a variety of forms. Often it's about the conditions of detention or restrictions of detention. So no clothes in a refrigerator-like room? Those could be restrictions in whether there's double bunking or whether there's food or whether there's access to medical care. There can be a variety of conditions which aren't necessarily in the nature of force. And here we shorthand this claim as an excessive force claim, and indeed Kingsley and Graham talk about the right of the pretrial detainee to be free from excessive force amounting to punishment. In this particular case, there are certain dimensions of this story which resonate in the language of force. There are other dimensions that are not clearly about force. It's not like the correctional officers forced her to remove her clothes. She wasn't wearing her clothes. Or paraded her through a hospital unclothed. Right. Although they might have put her in a restrained chair and then taken her down the hall. So I think the way that I have this sort of organized in my brain is that if we, and I have to be careful about this from a qualified immunity standpoint, if we think about the right to be free from punishment, the fact that she wasn't clothed and yet in a restrained chair after, let's suppose, after having been O.C. sprayed, that's all part of what I would call the punishment that was being inflicted upon her that was excessive, that was illegitimate, that was capricious and mean as compared to any legitimate governmental purpose that might have been served. If we think more narrowly within the framework of force, then it does seem to me that the fact that she was not clothed and remained not clothed doesn't fit quite as naturally. So whether what we're talking about is part of the claim or color or the texture of the claim I think depends a little bit on how broadly or narrowly one thinks about the claim at issue. Whether we're thinking more largely about punishment, more narrowly about excessive force that amounts to punishment, or more narrowly still to the point of the conversation that we were having earlier about at what point the right becomes, quote-unquote, clearly established for purposes of qualified immunity. Thank you. Thank you. Your Honors, I have just a few notes based upon the conversation that I'd like to follow up on. The first being that I do think that the struggle that we're experiencing here in this courtroom today with defining what the right is, with defining whether it's clearly established, to me sort of speaks to the overarching question of whether a reasonable officer would have known that the circumstances presented as pled in the plaintiff's complaint would have been unlawful for them to use the force that they did use on the circumstances at the times that are detailed in the complaint. So I think the struggle in defining that sort of highlights the exact point of what qualified immunity is intended to address, and that's how is a reasonable officer supposed to do their job if it's not abundantly clear to them that something they're doing is violative of the law. Isn't that because we're kind of at that crossroads where at least some discovery would let us know, let a district judge, especially an experienced one, ascertain which direction it goes. Because if you take everything in a sort of best case scenario for the plaintiffs here, then you have someone who the officers know is mentally ill and is unable to comply with directions, who is passive and not posing a threat to anyone, and doesn't comply with some directive, and then is subjected to all of the things we've talked about. In that scenario, it would seem it would be clear to any reasonable officer that that's not an appropriate response to someone who is unable to comply and is not posing a threat. But there are a whole lot of other facts that we've been supposing in different hypotheticals that could be developed that would change that dramatically and then put it in the realm of that gray area or even make it clear that qualified immunity applies. Certainly, there's always more clarity that comes with discovery. There's no question about that, and I think the discovery in this case would certainly highlight that. But I'd like to point to the use of force reports that counsel acknowledged were in possession when the amended complaint was filed and the facts that are then relayed in that amended complaint. And in the Stringer's brief in opposition to this appeal, they acknowledged that the use of force reports were disclosed and that they provided the basis for the allegations that the corrections officers were either present in the Stringer cell or supervised those who were present. And I would suggest to your honors that because we are talking about 29 individual officers, that there certainly does need to be a lot more precision about what it is that the individual officers did that would have violated Ms. Stringer's rights in order to assert a claim. Peratt v. Taylor and Rode v. Della Graffiti are obvious support for the idea that you can't just generally allege that somebody was in the vicinity of something that happened. And so we're here with 29 individual defendants, and I would suggest that the complaint certainly lacks enough specificity to make wholesale discovery of all of that appropriate. So to your honors' point of sort of targeted discovery, I certainly think that there is room for that if the court were to remand with very specific instructions that there has to be some articulation as to those individual defendants. You can't just aggregate all of these people together and assert that they've all violated. And the boilerplate allegations, right, not the allegation that excessive force was used doesn't accomplish the actual facts that need to be pledged to make it plausible. And so I think given the broadness of it, and I believe it was Judge Porter who asked about, well, what makes more sense, a 12E motion or some targeted discovery? And I think in response to that, which I think your honor does sort of get back to the point that you were trying to make, which is under a 12E situation, the plaintiff is still the master of their complaint. They're still able to just include the facts that they believe are beneficial or appropriate to their complaint. So I don't know that that has more specificity. You didn't file a 12E motion. I'm sorry? You didn't file a 12E motion. No, we did not. But I thought I was tying in Judge Porter's question about whether a 12E situation could help to rectify this sort of problem where you have the potential for more facts that might give a more informed decision on the qualified immunity question. And your answer is no, it doesn't really help because they still are the master of their complaint. Right. I think you still are in a situation where a plaintiff, although obligated under Rule 11 to assert only claims that they believe have a reasonable basis, and if there are facts that make that claim no longer viable, certainly that wouldn't meet the Rule 11 test. And I'm not suggesting here that that's the case, but meaning that under that circumstance an amended complaint still leaves it totally within the plaintiff's control, and that leaves this court in the same position that we're in now. And so I think that given the fact that it was not, in our estimation, under the case law that existed at the time, in 2020, when these officers were having to make the decision about how to deal with Ms. Stringer in the prison, that the case law was not so clear as to deprive them of the availability of qualified immunity, even on the facts as they are alleged in the complaint. I appreciate your point that, you know, if 29 people are simply present, that that's not sufficient. And it sounds like from Mr. Becker that plaintiffs recognize that, too, and fully expect to narrow down if this case moves forward, the universe of defendants. But we don't have a complaint that alleges they were simply present. The complaint alleges on each of these dates with a number of different officers that they actually engaged in the activities alleged. And that may not bear out. But, again, don't we have to take that as true because we're at this very early stage of a case? My only response to that, Your Honor, is that I do believe that when the complaint is assessed, you really have to look at whether it's an actual fact that's alleged or if it's just sort of boilerplate language that says that these seven officers were in the cell and participated in the use of excessive force. To me, that gets back to this question of can you strip out from the complaint what are just boilerplate contentions as opposed to actual factual allegations. But, again, what the complaint actually says is not just the use of excessive force. On each of these dates, it alleges particular acts in connection with coming in to the cell, the restraint chair, use of pepper spray, use of handcuffs. I mean, why aren't those facts sufficiently specific? I think the difficulty there is, again, that the use of force reports give that level of detail. The complaint does not say which of the guards actually sprayed or used the OC spray on those occasions. It just lumps all of them together who happened to be in the cell and involved in the extraction. And I think that the information, as the stringers have acknowledged, was within their possession and certainly could have articulated clearly under Peratt what it is that these individual officers did that should have them facing a lawsuit. And then also not being able to avail themselves of qualified immunity at this early stage of the litigation. I see my time is up. I think I thank you. We thank both counsel for excellent briefing and arguments. And there are patients going over time today to help the court work through this important case. We will take the case.